Jones v. Creamer.


# EXECUTORS AND ADMINISTRATORS—TRUSTS AND TRUSTEES.

[Fayette (2nd) Circuit Court; December 14, 1910.]

Dustin, Allread and Rockel, JJ.

HUMPHREY JONES v. A. R. CREAMER, ADMR., ET AL.

1. PROBATE COURT REQUIRED TO EXAMINE ACCOUNTS FILED AND. TO ORDER CORRECT ADMINISTRATION OF TRUST.

It is the duty of the probate court (Gen. Code 11202) to examine accounts filed in that court, and *sua sponte* or on request of an interested party make such orders as are proper and necessary to secure a faithful and correct administration of the trust.

2. TESTAMENTARY TRUST ENFORCEABLE ACCORDING TO TERMS OF CREATING INSTRUMENT UNTIL EQUITY DECREES OTHERWISE.

A testamentary trust, where possible of performance and not contrary to law, must be enforced according to the provisions of the instrument creating it, until a court of equity decrees otherwise.

3. PROBATE COURT CANNOT TERMINATE TESTAMENTARY TRUST.

The probate court has no power to terminate a testamentary trust.

4. ACTS OF TRUSTEE CONFINED TO EXECUTION OF TRUST PROVISIONS OR AS INSTRUCTED BY COURT.

A trustee should confine his acts to the carrying into effect of the provisions of the trust under which he is acting and if in doubt, apply to a proper court for instruction (Gen. Code 10857).

5. EXECUTOR CANNOT, BY AGREEMENT WITH PERSONS INTERESTED, DIVERT TRUST FUNDS FROM USE PRESCRIBED BY WILL.

Where a testator in his will provided for the erection of a family vault and that a specific sum should be used for that purpose, and further provided "that the sum of five hundred dollars shall be set aside and invested in good farm mortgages, etc., and the income held as a perpetual fund for the care of such vault after the same is erected." *Held*, that the executor cannot, even by consent of all persons having an interest in the estate of decedent, use said sum in the erection of the vault, and if it is so used, the executor is chargeable therewith and must account for same as provided in said will.

[Syllabus by the court.]

ERROR to common pleas court.

*Humphrey Jones*, for plaintiff.

Fayette County.

*Creamer, Creamer & Thompson,* for defendant:

Cited and commented upon the following authorities: *Kroll* v. *Close,* 82 Ohio St. 190 [92 N. E. Rep. 29]; Page, Wills p. 758, Sec. 59; *Green* v. *Hogan,* 153 Mass. 462 [27 N. E. Rep. 413]; *Ford* v. *Ford,* 91 Ky. 572 [16 S. W. Rep. 451].

## ROCKEL, J.

This case originally arose on exceptions filed by the defendants in error in the probate court to the final account of Humphrey Jones, executor of the last will of Henry Windle, deceased. The exceptions were sustained by the probate court and the plaintiff in error appealed therefrom to the court of common pleas where the exceptions were again sustained and he prosecutes error from that finding to this court.

It appears that Henry Windle, the testator, died testate in 1902, childless, leaving one Clarissa Windle his widow. In February, 1906, and before the estate of said Henry Windle was fully settled, Clarissa Windle, his widow, died and A. R. Creamer was appointed administrator of her estate. She died intestate, leaving sisters, many nephews and nieces as her sole heirs-at-law, some of whom are defendants in error.

Said Henry Windle, among other things, provided in his will that his entire estate should be converted into money, the same being about $20,000, and with the exception of a few small legacies, all should be invested in a mausoleum; and $500 was set aside as a trust fund to keep the same in repair. The items of his will relating thereto were as follows:

"I will and direct that the proceeds of the sale of my said two tracts of land and the money and other personal property which I may possess at my death, except said personal property bequeathed to my wife in item seven of this will and the sum of $500 as hereinafter provided, shall be used and expended by my executor in the erection of a family vault in the Washington C. H., Ohio, cemetery, arranged for the reception of the bodies of myself and wife; and my said executor is hereby authorized and empowered to purchase a suitable site for said vault, and contract for the erection of the same, and to do and perform all things needful and proper to fully

Jones v. Creamer.

carry out and effectuate my intentions and purposes in respect to said vault.''

"I will and direct that the sum of $500 shall be set aside and invested by my executor in good farm mortgages in Fayette county, Ohio, at not to exceed one-half the value of the land exclusive of improvements, and the income of said sum shall be held as a perpetual fund to be used in the care and maintenance of said vault after the same is erected."

The executor of Mr. Windle proceeded to convert the estate into money under the will of Henry Windle; the widow, if she elected to take thereunder, would receive practically nothing, as it was provided that all should be invested in this mausoleum.

After Windle's death the widow made some claims against the estate which, if true, might have absorbed the greater part of the estate, and in that way have defeated the will; but it appears that the widow was anxious that the mausoleum should be erected and it appears that likewise, the executor was very anxious that this should be done. It does not appear positively that the widow would have been so persistent in the assertion of her claims that the intention of the testator would have been defeated. However, finally she entered into a contract with the executor, in which she agreed that if the executor would put in all the funds of said estate, in said mausoleum, she would relinquish all claims she had against the estate and put in $1,000 of her money besides.

In accordance with this contract between the executor and the widow, he proceeded to the erection of the mausoleum and the widow paid to him the amount that she agreed to and likewise entered her election to take under the will and release all her claims against the estate.

The executor believed, as the widow was the sole heir at law of the deceased testator, that there could be no one else prejudiced, and that if she agreed that all of the funds of the estate might be put in this mausoleum, that he had a right so to do, and that thereby he would be released from setting aside or holding in trust the said sum of $500 which the tes-

tator had provided in item nine should be set aside and held in trust, for the purpose of maintaining said mausoleum.

The executor filed his final account setting forth the administration of said estate in which it was shown that all of the funds of said estate had been used, and that he had failed to reserve and set aside the sum of $500 for the purpose of keeping said mausoleum in repair, as provided in item nine of testator's will.

The widow, Clarissa Windle, having in the meantime died, A. R. Creamer, one of the defendants in error, was appointed her administrator, who filed exceptions to his account, and among other things excepted to the same for the reason that said $500 had not been reserved or set aside to keep said mausoleum in repair, as provided in said will.

In the court below the executor filed a motion to dismiss the exceptions, because A. R. Creamer as administrator of the estate of Clarissa Windle, deceased, had no interest pecuniary or otherwise in the matters involved in this case, and had no right under the law to file exceptions, or to become a party thereof. This motion was overruled and the matter was heard further upon the merits. This motion raises the interesting question, whether or not before a person can file exceptions in a court, he must have some pecuniary interest in the matter.

In the case under consideration, it will be admitted that neither the heirs of Clarissa Windle, nor her administrator could be financially benefited by requiring the executor to set aside the $500 as stated in the will. Whether by reason of the fact that this was to be a family vault and as such be an object in which the heirs of Clarissa Windle might have some interest in having it properly maintained, presents another question; and while not necessary in the decision of this case, it would appear that they ought to have some right to see that the grave of an ancestor was properly taken care of and therefore if there was a testamentary provision made for that purpose, that they might see that it was enforced. It is, however, generally admitted that these heirs as well as the admin-

istrator, so far as they claim under or through Clarissa Windle, are estopped by the contract of Clarissa Windle, made with the executor. In a certain measure this may be true, but even upon this plea of estoppel, there may be some doubt arising from the nature of estate devised.

In the recent case of *Kroll* v. *Close*, 82 Ohio St. 190, it is said, "the burden is upon the party who relies upon estoppel, to prove clearly and unequivocally every fact essential to the estoppel."

The case just cited is an interesting one when considered with the case at bar. In the case of *Kroll* v. *Close, supra*, the administrator, against the reluctant consent of the widow, had expended a rather large sum for funeral expenses, and exceptions were afterwards filed by her to such expenditure; and we think that in a case involving a trust of the character of the case at bar, the probate court has full and complete authority to go into the matter of exceptions, to the account of the trustee or executor, on its own motion, and if that be true, it is an immaterial matter who may be instrumental in bringing the court into action.

The statute of Ohio (R. S. 6403; Gen. Code 11202) does not anywhere specifically state that a party filing exceptions must be an interested party.

Gen. Code 11202 provides that:

"The probate judge may examine under oath, all executors, administrators, guardians, and trustees, and assignees, trustees and, commissioners of insolvents, touching their accounts. If he deems it proper to do so, he may reduce such examination to writing, and require such executor, administrator, assignee, trustee, or guardian to sign it. Such examination must be filed with the papers in the case."

It is distinctly stated in a work on probate practice in Ohio, "that the mere fact that no exceptions have been filed to an account does not relieve the court of its duty to make an examination of the account, and, for matters unexplained by the account call the accountant into court to make an explanation." Rockel, Prob. Prac. Sec. 734. And this doctrine.

seems to be approved in the case of *Kroll* v. *Close, supra,* in the third paragraph of the syllabus, where we find this statement:

"It is the duty of the probate judge, upon the hearing of an administrator's or executor's account, whether exceptions have been filed thereto or not, to scan closely the amounts claimed to have been paid for funeral expenses; and in the absence of statutory or testamentary provisions, the allowance for such expenses must be reasonable, having regard to the amount of the estate, the station in life of the deceased and the customs of the people in the same station, and if unreasonable and extravagant should be disallowed, even as against legatees and next of kin."

If it is the duty to disallow an expenditure made for funeral expenses, even as against legatees and next of kin, how much more would it be the duty of the probate court to enforce a provision of a will of a deceased testator. In some other states it is provided by statute that no one can file an exception, except he is an interested party, but even if that were a statutory provision of Ohio, upon the decision above quoted of the Supreme Court, and in accordance with our own ideas, we believe it to be the right and the duty of the court to enforce the provisions of a trust, when the same is being executed by a person, who is under the jurisdiction of the court. So we find that there was no prejudicial error in the court overruling this motion.

The plaintiff in error and executor in justification of his not setting aside the $500 as provided in the said will, claims that if he would not have made the contract with Mrs. Windle, whereby she agreed to waive her claims against the estate, that it would have been impossible to erect a mausoleum at all, and the trust would have failed. We are not so sure that the testimony shows that such would have been the result. It appears from the testimony that the widow was very anxious to have this mausoleum erected and it does not appear whether the claims that she asserted against the estate would have been such as would have prevented the building of a mausoleum;

Jones v. Creamer.

perhaps not as costly a one as the one that finally was erected. The plaintiff in error has sought to have the doctrine of *cy pres* applied. It is questionable whether this doctrine is applicable to a case of this kind. It seems that the doctrine of *cy pres* has been applied solely for the purpose of preventing a failure of a devise to charity made by a testator in his last will and testament.

The erection of a monument over a person's grave can hardly be considered in the light of a devise to a charitable object or for charitable purpose.

If the executor was in doubt as to the proper construction of this will, and he wished to know what his rights and duties were, the statute (R. S. 6202; Gen. Code 10857) makes ample provision for his filing a petition, and have a court of equity act and instruct him in a proper performance of his duties; but he claims that even if he has not done so in this case, that if he had practically done that which a court of equity would have ordered him to do, that his action should be sustained. This would be, as we think, the approval of a dangerous doctrine in reference to trustees in the performance of their duty.

If a trust is useless or impracticable, etc., a court of equity upon a proper showing may terminate it.

In the case at bar, it is clearly evident from the testimony that the executor built the mausoleum and used all the funds on the theory that there was no one else that had any interest but the widow, and in that way no exception could be taken, even if the provision of the will was not complied with.

If a person is to have the right to dispose of all his property by testamentary provision in any manner that he may see fit, so long as the same is not contrary to law, then it should be the duty of the court to enforce that right and not permit heirs and devisees and legatees merely because they think differently and without any sanction of the court, proceed to annul a testator's deposition. If Henry Windle had the right to dispose of his property as he saw fit, he had a

Fayette County.

right to make a provision that the sum of $500 should be set aside as mentioned in item nine of his will, and the following from the case of *Kroll* v. *Close, supra,* page 198, is not inapplicable to the case at bar.

"The administrator appears to have been a person having knowledge of the usual duties of an administrator, for he had been a clerk in the office of the probate judge. (In the case at bar he is an able lawyer.) He was there as a trustee for creditors and the legatee. He was not bound to listen to the desires and importunities of persons who desired to be liberal with money which was not theirs to spend. He is presumed to have known the law, and that, no matter who desired it or who assented to it, his act in purchasing that casket was liable to be reviewed, either with or without exceptions, by the probate court when he should account for the assets of the estate."

We therefore find no prejudicial error in the court below and the same is affirmed.

**Dustin** and **Allread, JJ.,** concur.

---

Note.—Since the decision was rendered the following pertinent cases were brought to the court's attention as to when a trust will be terminated. *Robbins* v. *Smith,* 72 Ohio St. 1 [73 N. E. Rep. 1051]; *Robbins* v. *Smith,* 27 O. C. C. 91 (5 N. S. 545); *Lohrer* v. *Citizens' Sav. & Tr. Co.* 14 Dec. 289; *Kiersted* v. *Smith,* 10 Dec. 279 (8 N. P. 378).